```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF CONNECTICUT
                                     :
TRAVELERS CASUALTY & SURETY          :
CO.                                  :
                                     :
                                     :
                                     :
v.                                   :    CIV. NO. 3:10CV400 (WWE)
                                     :
CENTURY INDEMNITY CO.                :
                                     :
                                     :
                                     :
                                     :
```

### RULING ON MOTIONS TO COMPEL [DOC. #69, 81]

This is a reinsurance contract disputarises from Century's denial of certain payment claims under a series of reinsurance contracts covering underwriting years 1969-1974. Among other things, the reinsurance treaties covered certain insurance policies issued by Travelers to two companies engaged in the business of handling, manufacturing, distributing, installing and/or using asbestos-containing materials, Armstrong Cork Company ("Armstrong") and ACandS, Inc. ("ACandS")(together, the "Insureds"). At issue is the manner in which plaintiff allocated and presented the asbestos losses to Century. Defendant alleges that, "Plaintiff failed to take reasonable, good faith, business like steps respecting the assessment, determination, allocation, and presentation of the underlying claims to the reinsurance contracts." [Doc. #36, Answ. 3d Aff. Def.].

Pending are cross motions to compel. [Doc. ##69 and 81].

Oral argument was held on October 13, 2011.

**Century's Motion to Compel [Doc. #69]**

1. <u>Coverage Dispute Documents</u>

Century seeks all coverage dispute documents, as well as documents relating to the Wellington Non-Products ADR, relating to the underlying coverage disputes between Travelers and Armstrong and ACandS. Century argues that it "is entitled to understand what happened in the underlying disputes with Armstrong and ACandS, which resulted in the very liabilities Travelers is asking Century to pay because they supposedly qualify as a 'series' of losses having a 'common origin'." [Doc. #69 at 8].

Interestingly, both parties seek discovery on the underlying coverage disputes from each other and both sides oppose this discovery. The parties agree that the issue presented is whether Travelers properly packaged all of the losses as one loss under the reinsurance treaty. Travelers states that the decisions to make a single loss presentation were made by reinsurance employees not the employees responsible for the direct coverage disputes at Travelers. Moreover, Travelers argues that Century is not challenging the amounts of settlement or allocations as products or non-products losses. The Court finds that the first step should focus on discovery into Traveler's evaluation of its

losses with regard to a single loss presentation of claims on the reinsurance treaty.

Century's requests for coverage dispute documents on the underlying coverage disputes, Requests for Production Nos. 3-7, 10 and 19 and Interrogatories Nos. 3 and 4, including requests for ADR/Mediation materials, Request for Production Nos. 8 & 9, are **DENIED** on the current record.

2.   Evaluation of the Reinsurance Claims

The Court has carefully considered the parties' arguments and finds that the following information regarding the evaluation of the reinsurance claims is relevant to this lawsuit.

Travelers will provide all documentation evaluated and/or relied on by the Company in reaching its "theory that the claims against Armstrong Cork and ACandS constitute a single reinsurance occurrence subject to a single retention per treaty year," or "one annual reinsurance occurrence." [Doc. #69 Ex. D]. This will include, but is not limited to, any memos, correspondence, documents, materials relied on, analyses, evaluations regarding its theory on reinsurance billing referenced or relied on in the "Summary of Aetna's Billing for Armstrong-Related Asbestos Bodily Injury Claims." Id.  Travelers will provide Bates Stamps numbers for any documents previously provided that are responsive to this request.

<u>Privileged Documents</u>

In response to Century's Requests for Production Nos. 8 and 9, Travelers asserted that the requests were overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence; Travelers further objected to production of privileged documents.  Century argues that: (1) it is contractually entitled to these materials under the access to records clause of the treaties; (2) when evaluation documents were drafted, Century shared a common interest; and (3) Travelers waived any privilege through its voluntary, selective disclosures to Century of its communications with its attorneys.  The Court declines to find a wholesale waiver of the attorney-client privilege here.

<u>Access to Records</u>

Century argues that it is contractually entitled to privileged materials under the access to records clause of the treaties, which provides that Century may have "free access to the books and records of the Company at all reasonable times." Century contends that this clause does not exclude Travelers' communications with its attorneys or its attorneys' evaluation of the claims.  Travelers argues that the access to records clause does not permit Century access to privileged material.  The Court agrees.  "The reinsurer is not entitled under a cooperation clause to learn of any and all legal advice obtained by a

4

reinsured with a reasonable expectation of confidentiality." North River Ins. Co. v. Philadelphia Reinsurance Corp., 797 F. Supp. 363, 369  (D.N.J. 1992)(citation omitted).  Without more, Century's argument fails.

    Common Interest

    Century next argues that it is entitled to privileged materials because when the evaluation documents were drafted, Century shared a common interest with Travelers as its reinsurer. Century cited no cases to support its contention that the common interest doctrine applies in a reinsurance contract dispute where, as here, Travelers retained separate counsel wholly independent of Century, Century has no input into the relationship between Travelers and its counsel, and where the parties are clearly adverse to one another.  North River Ins. Co. v. Philadelphia Reinsurance Corp., 797 F. Supp. 363, 367 (D.N.J. 1992) (declining to decide whether differences between reinsurance and direct insurance require a different application of the common interest doctrine.).  "The [common interest] doctrine in no way mandates [Travelers] to provide [Century] with privileged information merely because at one point they had a 'common interest.'  If this were the intention of the doctrine, the attorney-client privilege would be virtually obliterated, as most parties in lawsuits have had a common interest at some point in time . . . ."  Ryan v. Nat'l Union Fire Ins. Co., Civ. No.

5

3:03-cv-644(CFD), 2006 U.S. Dist. Lexis 7366, *16, n.5 (D. Conn. Feb. 28, 2006).

### Century's Exhibits P and Q

Even if these documents were privileged, Century argues that Travelers waived any privilege through its voluntary, selective disclosures to Century of its communications with its attorneys. At issue are two Simpson Thacher memos dated December 21, 2001, Def. Ex. P, and January 10, 2002, Def. Ex. Q, sent by Travelers to Century in April 2009. These documents were provided by Travelers in response to Century's request for information related to the reinsurance billings at issue in a Century state court action.

Travelers contends that providing these two documents to Century was not a waiver because the documents are not privileged, as the Simpson Thacher memos are factual accounts of settlement negotiations. The documents were provided after the parties settled. The December 21, 2001, memo clearly identifies the communication as a "summary" of a meeting and describes the discussion at the meeting. The January 10, 2002, memo similarly "reports" the discussion at a meeting held that morning. Importantly, Travelers disclaims any privilege as to these two documents because they relay information not legal advice. Accordingly, Century's request is denied.

Going forward the parties will serve a privilege log when

withholding a document on a claim of privilege, as set forth in Fed. R. Civ. P. 26 (b)(5)(A).

3. <u>Communications with Other Reinsurers</u>

Century seeks Travelers' communications with other reinsurers concerning the presentation of the asbestos claims at issue in this case. [Doc. 69 at 17-19]. "Century is seeking communications with other reinsurers who participated on the same Reinsurance Treaties that Century did, the Reinsurance Treaties that are at issue in this litigation." <u>Id.</u> at 19. Century argues that, "Courts routinely order the production of a cedent's communications with other reinsurers." <u>Id.</u> at 18.

Travelers first argues that the "courts" that Century refers are New York courts, not Connecticut courts. Second, the New York opinions do not stand for this proposition. In <u>AIU Ins. Co.</u>, the Court permitted discovery on AIU's past interpretation of its prompt-notice obligations under the reinsurance contracts, finding that, the documents were relevant "to the extent they disclose the circumstances under which AIU determined it was appropriate to give notice under the reinsurance contracts at issue." <u>AIU Ins. Co. v. TIG Ins. Co.</u>, No. 07 Civ. 7052(SHS)(HBP),2008 WL 50602030, at *10 (S.D.N.Y. Nov. 25, 2008). Travelers argues that this information is irrelevant, that "the actions of Travelers Casualty's other reinsurers are not

important and necessarily depend on facts and circumstances that are specific to those insurers and do not apply to Century." [Doc. #75 at 14]. This request **DENIED** on the present record. At issue is Travelers' process, the facts considered in the evaluation and presentation of the reinsurance claims to Century.

### Travelers Motion to Compel [Doc. #81]

Travelers seeks discovery of Century's own involvement with the Insureds' asbestos losses, including (1) Century's direct insurance of the Insureds; (2) Century's reinsurance of other companies that insured ACandS and Armstrong for asbestos liability; and (3) Century's position as to how Travelers Casualty should have allocated the Asbestos losses under the Reinsurance Treaties.[1]

1. <u>Century's direct insurance of the Insureds</u>

    For the reasons stated, this request is denied at this time.

2. <u>Century's reinsurance of other companies that insured ACandS and Armstrong for asbestos liability</u>

    The Court finds that information regarding Century's "assessment, determination, allocation, and presentation" of asbestos losses to its reinsurers under reinsurance treaties for 1969-1974 is relevant discovery. Fed. R. Civ. P. 26(b)(1). As set

---

[1] Travelers seeks to compel responses to Requests for Production Nos. 5, 15, 17, 18, 28 and 29 and Interrogatory Nos. 10, 13 and 14.

forth in defendant's Third Affirmative defense, the question of what is reasonable is clearly at issue in the case.

Accordingly, Century will provide information on "assessment, determination, allocation, and presentation" of asbestos losses for Insureds Armstrong Cork and ACandS to its reinsurers for the relevant time period of 1969-75.  Century will provide copies of the Reinsurance Treaty language it relied on in making asbestos loss claims to its reinsurers.  Century will provide any memos, correspondence, documents, or materials relied on that support its "assessment, determination, allocation, and presentation" of asbestos losses to its reinsurers.

The parties will meet and confer to discuss the contours of this discovery and endeavor to reach an agreement.

3.  <u>Century's position as to how Travelers Casualty should have allocated the Asbestos losses under the Reinsurance Treaties</u>

<u>Interrogatory No. 10</u>: State with specificity the manner in which Century contends Travelers Casualty should have allocated and presented the Asbestos Losses to Century under the Reinsurance Treaty.

This request is **GRANTED**. Century will provide its response to plaintiff and to the Court.

<u>CONCLUSION</u>

For the foregoing reasons, defendant's Motion to Compel **[Doc. #69]** and plaintiff's Motion to Compel **[Doc. #81]** are

**GRANTED** in part and **DENIED** in part consistent with this ruling.

The parties will confer and endeavor to agree on the scope of disclosure.  This ruling is without prejudice to either party seeking further discovery after the parties have an opportunity to review these documents. The parties may contact the Court to schedule a case management conference if they are unable to reach an agreement.

Status Conference

Fact discovery closes on November 14, 2011. A telephone status conference is scheduled for November 28, 2011 at 10:30AM at which time the Court will address the parties' request for an extension of time and any other requests to modify the scheduling order.

This is not a recommended ruling.  This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. § 636 (b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

Entered at Bridgeport this 16th day of November 2011.

```
      ___/s/_____
      HOLLY B. FITZSIMMONS
      UNITED STATES MAGISTRATE JUDGE
```